UNITED BUYING SERVICE INTERNATIONAL CORP., Appellant, *v.* UNITED BUYING SERVICE OF NORTHEASTERN NEW YORK, INC., et al., Respondents.

First Department, December 21, 1971.

76

*Sidney Dickstein* of counsel (*Dickstein, Shapiro & Galligan*; *J. Michael Gottesman,* attorneys), for appellant.

*Michael R. Todd* for respondents.

EAGER, J. The judgment (erroneously designated as an order) confirming certain arbitration awards and denying the petition to vacate the awards should be affirmed.

The awards covered the claims of the parties in connection with and arising out of " Franchise Agreements " for the franchising of the respondents Cunningham and Moyer and their corporations for the use in described territories of the name, selling methods and procedures and certain services of the petitioner in the sale of automobiles and other goods. Respondents and other franchisees had brought suit in the United States District Court to recover for alleged fraud in inducing the franchise agreements but, inasmuch as the agreements contained a broad arbitration clause, the petitioner served demands for arbitration of alleged claims for breach of contract, including claims for royalties allegedly due by respondents. Thereafter, following a motion for a stay of the District Court action, by letter agreement, the parties agreed to include in the demands for arbitration the questions of whether the petitioner had fraudulently induced the franchisees to enter into the franchise agreements and whether it had breached the agreements.

The arbitrator, following several days of hearing, rendered an award terminating the franchise agreements with respondents and directing recoveries by the respondents in " settlement of [their] mutual claims ".

We conclude that there is no merit to the several contentions urged by the petitioner for a vacatur of the arbitrator's awards. We reject with but a brief comment the contention that CPLR 4213 (subd. [b]) applied; that, therefore, Special Term should have made " factual findings " in support of its decision confirming the award and that " this case must be remanded to the trial court for formulation of such findings ". Generally, CPLR 4213 (subd. [b]) is applicable only where a court tries issues of fact without a jury and, certainly, does not apply to this determi-

nation. Indeed, the court was without power to review the record before the arbitrator for the purpose of making findings of fact. A court has no right to review the action of an arbitrator upon the merits of the controversy submitted to him or to grant relief from an arbitrator's award because of errors of fact not evident on the face of the award. (See *Matter of Wilkins,* 169 N. Y. 494; *Matter of Torano. [MVAIC]*, 19 A D 2d 356, affd. 15 N Y 2d 882.) Inasmuch as an arbitrator's award may be vacated only upon the grounds specified in the statute (*Matter of Granite Worsted Mills [Aaronson Cowen Ltd.]*, 25 N Y 2d 451, 454), the confirmation of an award requires findings of fact only in a case where the court has properly held an independent trial of the issues of fact appertaining to an alleged statutory ground for the vacatur.

Furthermore, clearly meritless is petitioner's point that the arbitrator committed procedural misconduct in allegedly depriving it of the right to present material evidence and to cross-examine witnesses. Special Term concluded that " a careful reading of the record of the arbitration proceeding fails to substantiate petitioner's contention * * * that there were. procedural improprieties resulting in prejudice to petitioner ", and we agree. According to the record, the arbitrator at no time refused to hear any witness or to receive any evidence offered by petitioner. Nor does the record support the petitioner's contention that the arbitrator precluded proper cross-examination of respondent Cunningham as to the losses alleged to result from the operations under his franchise agreement. The apparent rejection by the arbitrator of one broad question relating to the factors contributing to Cunningham's losses in 1970, was explained by the arbitrator's statement that " We don't want to have a general economic survey here " and that he did not " think that the witness is qualified to answer " the particular question. And, on the record, we conclude that proper cross-examination was not precluded by the arbitrator's observation that he was " not assuming * * * that specific losses are related to specific problems " such as the General Motors strike, lack of adequate dealer members, etc. In fact, from time to time during the hearings, it was made very plain that the respondent Cunningham was claiming as an item of damage a salary he would have earned during the three-year period of operations under his franchise agreement, and it does not appear that the petitioner's counsel was actually misled by the arbitrator's statements or that he was prevented from proper cross-examination or presentation of evidence bearing on the claimed item of damage. In any event, this was not a court trial and,

at the most, the arbitrator's hearing statements and comments reflect alleged errors of judgment, or in the law or upon the facts, which are not subject to judicial review. (See *Matter of Wilkins, supra; Matter of Brighton Mills [Rayon Corp. of Amer.]*, 282 App. Div. 669, 670; *Matter of Kemikalija Import-Export [Associated Metals & Mins. Corp.]*, 19 A D 2d 868.)

Now, we reach the principal point in the case and we agree with Special Term's conclusion that " a careful reading of the record of the arbitration proceeding fails to substantiate petitioner's contention that the award of damages was in excess of the arbitrator's powers ".

The record of the proceedings before the arbitrator is to be considered in the light of the agreement between the parties. First, it is noted that the letter agreement, claimed to limit the scope of the arbitrations, expressly referred to the franchise agreements and to the demands for arbitration thereunder and merely provided for the submission of additional items to arbitration. The writings (the franchise agreements, including the arbitration clause therein, the petitioner's demands for arbitration and the letter agreement) are to be read together to give full effect to the agreement for arbitration of the disputes between the parties. Under the circumstances, the letter agreement must be considered as supplementary to and not superseding the general arbitration clause contained in the franchise agreements. Consequently, it is significant to note that the arbitration clause broadly provided that " any dispute arising out of or concerning this Agreement shall be settled and determined by impartial arbitration by the American Arbitration Association in accordance with the rules and regulations then prevailing ".

Certainly, this broad arbitration clause generally conferred the power upon an arbitrator to award damages in connection with the settlement of disputes submitted to him. This power is implied, for " damages are a most common feature of arbitration awards " and the parties are not deemed to have " intended their arbitrations to result in futile declarations only ". (*Matter of Publishers' Assn. of New York City [New York Stereotypers' Union No. One]*, 8 N Y 2d 414, 418.)

As a matter of fact, the petitioner's counsel in the briefs submitted, concedes that the arbitrator had " the power to render an award of compensatory damages " but he contends merely that the arbitrator, in excess of his powers, included consequential damages in the recovery awarded to respondent Cunningham and his corporation. Although not so stated, the recovery apparently included a sum to cover the salary loss of

Cunningham during the period of his operations under his franchise. Such loss, however, was an essential element of the damages claimed by respondent before the arbitrator and it merely begs the question to argue that the arbitrator could not consider and allow the particular item. In any event, inasmuch as the arbitration was to be held in accordance with the rules of the American Arbitration Association, the right of the arbitrator to grant any relief deemed by him to be just and equitable included the power to award consequential damages. (*Matter of De Laurentiis* [*Cinematografica de las Americas, S.A.*], 9 N Y 2d 503; *Matter of Juilliard & Co.* [*Baitch & Castaldi*], 2 Misc 2d 753, 754.)

Furthermore, the record discloses that the particular item was voluntarily submitted by the parties for determination by the arbitrator. During the proceedings, the respondents placed before the arbitrator the details of their claim, including a claim for a "salary figure of $15,000 * * * $15,000 a year for * * * approximately three years", and later, the arbitrator specifically noted that the respondent's claim for damages was "in the amount of $8,956.50 plus $12,000 constituting the franchise fee, plus $45,000 constituting three annual salaries or compensation for his time for three years".

At no time did the petitioner or its counsel object to the consideration by the arbitrator of the particular damage claims put on the record for his determination, and the parties must be deemed to have acquiesced in the submission of the same to the arbitrator. Where parties to an arbitration proceeding voluntarily submit and litigate therein on the merits matters not embraced within the expressed description of arbitrable disputes or matters as set forth in the written arbitration agreement, the submission and litigation amount to a waiver of the limitations of the arbitration agreement and give the arbitrator jurisdiction to determine the particular matter; and the parties will be bound by the award of the arbitrator thereon. (See *Matter of Ingardia Constr. Co.* [*Dyker Bldg. Co.*], 14 A D 2d 23, affd. 11 N Y 2d 726; *Matter of Stroud* [*MVAIC*], 17 A D 2d 616, affd. 13 N Y 2d 611; *Matter of Kessler* [*National Cas. Co.*], 8 A D 2d 105, affd. 7 N Y 2d 909.)

Particularly pertinent is the *Ingardia* case, where the arbitrators, without objection of the parties, took testimony on the issues with respect to Ingardia's claim for damages due to redesign of a contract. The court, noting that the arbitrators had taken testimony on the issues presented to them over a period of three years, said: "during that time, while evidence was being offered on Ingardia's claims, Dyker made no appli-

cation to stay the arbitration of the issue. In the light of Dyker's express submission of the issue of the claim for damages due to redsign of the contract, its failure to make timely challenge to the arbitrability of this issue and its active participation in the hearings before the arbitrators in litigating that issue, we hold that Dyker must be deemed to have waived any contention that the contract did not provide for arbitration of the issue'' (*Matter of Ingardia Constr. Co. [Dyker Bldg. Co.], supra*, p. 25).

Finally, it is noted that by the letter agreement, the parties expressly covenanted that they would `` enter into such formal amendments to the arbitration demands as may be required to implement '' the provisions of the agreement. Inasmuch as the matter of damages, as an essential element of the respective claims of the parties, was voluntarily submitted to the arbitrator, the petitioner, following the award, should not be permitted to urge the absence of a formal amendment, agreed to be supplied, as a ground for attacking the items of the damage award.

The decision of *Matter of Granite Worsted Mills (Aaronson Cowen, Ltd.)* (25 N Y 2d 451, *supra*), referred to by petitioner and cited in the dissenting memorandum, is not in point. There, the contract in chief between a buyer and a seller of goods expressly provided that the `` Buyer shall not be entitled to claim or recover consequential damages for defective goods * * * or for the loss of contemplated use of profits; and in all events Buyer's damages shall not exceed the difference in value on date of delivery between goods specified and goods actually delivered.'' (p. 454.) Consequently, where the arbitrator awarded consequential damages to the buyer for loss of profits, the court held that the arbitrator `` has included an element of damages specifically excluded by the contract pursuant to which he obtained his very authority to act '' and that therefore he exceeded `` his powers under the contract and the award thus made must be vacated upon proper application.'' (p. 456.) Here, however, the contract in chief (the franchise agreement) contains no limiting provisions with respect to damages recoverable by either party for breach thereof and, in fact, as aforenoted, contains a very broad arbitration clause permitting the arbitrators to award any just and equitable relief.

The arbitrator, having the unrestricted power to award damages, was not bound by the rules of evidence or the measure of damages applicable in a court of law; his awards of stated sums, without a specification of items, may not be vacated or reduced on the ground that the amounts or supposed items included are

unsupported on the law or the facts. The awards of the arbitrator of the specific amounts stated to be "in settlement of all mutual claims" of the parties should be accepted as final and conclusive. There is no occasion for a remission of the matter to the arbitrator as suggested by the dissent. (Actually, there would be no valid basis for such a remission if, as submitted by the dissent, there was no power in the arbitrator to include the particular item in the award.)

The judgment, entered March 30, 1971, should be affirmed, with costs and disbursements.

McGIVERN, J. P. (dissenting). The order appealed from should be modified so as to vacate the award to United Buying Service of Northeastern New York and Hamilton A. Cunningham (hereinafter Cunningham) and remit the award to the arbitrator for the purpose of making a permissible determination. The award made, insofar as it clearly awards Cunningham consequential damages, was made in excess of the arbitrator's powers. In reaching this conclusion, I would stress the fact that the questions properly before the arbitrator were not those originally agreed upon, which embraced "any dispute arising out of or concerning this [franchise] Agreement". Thus, we need not reach the question whether the award made to Cunningham would have been permissible under the latter clause. The fact is that the scope of the foregoing agreement was circumscribed and succeeded by a stipulation entered into three years later by the parties in an action brought, and still pending in the United States District Court for the Southern District of New York by franchisees, wherein fraudulent inducement by the petitioner was claimed. And it was the petitioner who thereafter demanded arbitration, raising questions of liability on respondents' part, and specifically charging respondents with breach of contract in failing to remit the royalty payments provided for in the franchise agreement. It was pursuant to this stipulation that the controversy was submitted to arbitration, and only two questions were submitted with respect to respondents' claims: "(1) Whether [appellant] fraudulently induced [respondents] to enter into their Franchise Agreements"; and "(2) Whether [appellant] breached any of the Franchise Agreements with [respondents]."

Consequently, we are simply faced with an agreement to arbitrate limited issues, not including consequential damages, which may not be awarded without specific authorization of the parties, here absent. (See 23 Carmody-Wait 2d, New York Practice,

§ 141:139; *De Lillo Constr. Co.* v. *Lizza & Sons,* 7 N Y 2d 102, 106; *Matter of Granite Worsted Mills [Cowen],* 25 N Y 2d 451.)

The award here made was greatly in excess of any amount that might be required to be paid by appellant by way of restoration of the initial franchise fees, in the event the arbitrator found rescission warranted, and exceeded the powers of the arbitrator under the submission made.

That the arbitrator recognized the limitation of his powers, yet, nevertheless exceeded them, is reflected in the fact that in curtailing the presentation of evidence and cross-examination of witnesses, he apparently misled appellant's counsel to believe he was not considering consequential damages, which exclusion would have comported with the limitations contained in the two issues submitted to him. Significantly, respondents admit there was no attempt to causally relate Cunningham's losses with appellant's breach. And since the burden of establishing appropriate causality was on the respondents, it was error to reject pertinent and material evidence. Under the circumstances here prevailing, respondents' continuance, without further objection, cannot be deemed a waiver of the challenged defect. Having been suffered to believe that it was not necessary or appropriate for him to present evidence showing the absence of any causal connection between the losses and the claimed breach, it was neither necessary nor appropriate for appellant's counsel to make a formal objection. There was certainly here no intentional relinquishment of a known right and there is no valid basis, predicated upon the evidence received, for the conclusion that the powers of the arbitrators, as limited by the stipulation, were enlarged by way of waiver. *Alsens Amer. Portland Cement Works* v. *Degnon Contr. Co.* (222 N. Y. 34); and I find no valid basis for implying such.

Particularly pertinent is the statement of the Court of Appeals in *Gervant* v. *New England Fire Ins. Co.* (306 N. Y. 393, 400) wherein it was noted that: " Even in arbitration proceedings the rule is that ' If the arbitrators refuse to hear evidence pertinent and material to the matter in controversy, it is unquestionably such misconduct as will vitiate an award in a court of equity.' (*Van Cortlandt* v. *Underhill,* 17 Johns. 405, 410; *Halstead* v. *Seaman,* 82 N. Y. 27, 30–31; *Matter of Rosenberg [Wolfe],* 180 Misc. 500, 504.) "

The narrow submission here made at best simply authorized compensatory damages, or reparations, as an incident to the power that had been ceded to declare the rights between the parties, predicated upon their determination as defined by the

specific and limited questions submitted to arbitration. The latter power alone sustains a validation of the award made to respondents E. M. Buying Services, Ltd. and Graydon Moyer, which awarded no element of purely consequential damages.

In any event, the only viable contract to arbitrate respondents' claims is that founded upon the June 30, 1970 stipulation, which must be strictly construed. (See *Matter of General Silk Importing Co.*, 200 App. Div. 786, affd. 234 N. Y. 513; 22 Carmody-Wait 2d New York Practice, p. 141:12; *Matter of Rosenbaum* [*Amer. Sur. Co.*], 11 N Y 2d 310; *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288; also, *Matter of American Silk Mills Corp.* [*Meinhard-Commercial Corp.*], 35 A D 2d 197.)

In my view, the background of the proceedings here involved clearly negates the view of the majority opinion that the stipulation was intended to supplement or enlarge the original basis for arbitration.

The unchallenged letter of appellant to the arbitrator dated September 14, 1970, following a request made by him at the first preparatory hearing on September 10, 1970 for a delineation of the issues which were before him, which defined such issues pursuant to the stipulation of the parties, clearly discloses there is no basis for the statement in the majority opinion that the stipulation supplemented by way of enlargement the issues properly before the arbitrator.

Finally, I find no persuasion in the majority opinion's striving to distinguish the *Granite* case. To the contrary. The *Granite* case still stands for the proposition that when the arbitrator awards consequential damages, uncountenanced by the submission, he is guilty not of a " mere error " of judgment or a misconstruction, he has disregarded its terms and exceeded his powers.

Except for the foregoing suggested modification, I would affirm the order and judgment appealed from.

KUPFERMAN, MURPHY and TILZER, JJ., concur with EAGER, J; McGIVERN, J. P., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on March 30, 1971, affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal.