**EEC PROPERTY COMPANY,**
Respondent,

v.

**Dr. Martin KAPLAN, et al., Appellants.**

No. CX–97–1830.

Court of Appeals of Minnesota.

May 12, 1998.

David W. Larson, John R. Neve, Hessian, McKasy & Soderberg, P.A., Minneapolis, for appellants.

Peter M. Lancaster, Dorsey & Whitney, LLP, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and LANSING and PETERSON, JJ.

## OPINION

LANSING, Judge.

Relying on a finding of waste of partnership assets, an arbitrator awarded money damages to two partners in a six-member partnership and permitted, at the two partners' election, a mandatory buyout of their partnership interest. On the partnership's application for vacation under Minn.Stat.

§ 572.19 (1996), the district court vacated both the damages and the mandated buyout. We reverse and reinstate the award.

## FACTS

EEC Property Company is a general partnership of doctors of ophthalmology formed to own and operate a medical office building. Drs. Martin Kaplan and Robert Fink (claimants) are EEC partners. The remaining four EEC partners (majority) have a separate corporation, Eye Physicians and Surgeons.

EEC leased office space to Kaplan and Fink and to Eye Physicians and Surgeons under separate ten-year leases that expired on December 31, 1994. When the claimants moved out of the building at the end of 1994, the majority executed a new lease to their corporation at $10 per square foot less than the claimants and the majority had paid under the preexisting lease. The claimants objected that the rate was far below market value and that the majority was making no serious effort to lease the remaining vacant space. Fifteen months later, they initiated arbitration on claims of self-dealing and breach of fiduciary duty and requested dissolution of the partnership. In its answering statement, EEC denied the claims and asserted a counterclaim for lost rent and leasing expenses.

After concluding the arbitration hearing, the arbitrator sent a letter to the claimants and the majority asking whether they would prefer a buyout rather than a dissolution. The arbitrator indicated that the buyout remedy would apply the valuation method outlined in the amended partnership agreement. The claimants agreed that a buyout was preferable to dissolution, but the majority disagreed.

The arbitrator awarded the claimants $11,-000 for EEC's failure to rent their vacated space. He concluded that the failure reasonably to rent the space constituted a waste of the partnership's assets. The award provided that either or both of the claimants could elect to withdraw from the partnership. If either elected to withdraw, EEC was required to recognize the withdrawal, value the partnership interest according to the method

outlined in the partnership agreement, and adhere to an accelerated payment schedule that reduced the payment period from ten years to three-and-one-half years to coincide with completion of the office building's mortgage payment.

EEC moved to modify or vacate the award. Ruling that the arbitrator exceeded his authority in fashioning the award, the district court vacated both the damages and the provision allowing the claimants to withdraw from the partnership. The claimants appeal.

## ISSUES

I.  Did the arbitrator exceed his authority by ordering EEC to allow a mandatory buyout and to pay damages for waste when these issues were not specifically raised in the arbitration submission?

II. Do the award's money damages and substantive buyout provisions exceed the arbitrator's power to fashion a remedy?

## ANALYSIS

■ The district court's power to vacate an arbitration award is purely statutory. *AFSCME Council 96 v. Arrowhead Reg. Corr. Bd.*, 356 N.W.2d 295, 299–300 (Minn. 1984); Minn.Stat. § 572.19 (1996). One of the grounds allowed by the statute is that the arbitrators exceeded their powers. Minn. Stat. § 572.19 (1996). Unless there is a clear showing that arbitrators were unfaithful to their obligations, courts assume they did not exceed their powers. *Hilltop Constr. v. Lou Park Apts.*, 324 N.W.2d 236, 239 (Minn.1982).

■ When the parties raise the issue of the scope of the arbitration agreement in judicial vacation proceedings, the court must independently determine the issue by ascertaining the parties' intent from the language of the arbitration agreement and other admissible evidence. *U.S. Fidelity & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 69 (Minn. 1978). In other words, this court may vacate the award only if it finds the arbitrator actually lacked the authority to decide the issue. *Id.*; *Eide v. State Farm Mut. Auto. Ins. Co.*, 492 N.W.2d 549, 554 (Minn.App.1992). Thus,

whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation. *See Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn.1995). Interpretation of a contract is subject to de novo review. *Id.*

## I

The text of the arbitration agreement determines whether the parties intended to arbitrate a given issue. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). The arbitration clause of EEC's partnership agreement provides the arbitrator with broad powers:

> 8.04. *Arbitration.* Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association then in effect and judgment upon the award rendered by the arbitrator(s), may be entered in any court having jurisdiction thereof. * * *

### A. Notice of Buyout Remedy

■ In vacating the arbitrator's award, the district court found no evidence in any of the submissions (arbitration claims, pretrial briefings, submissions, testimony, and posttrial briefings) that claimants requested withdrawal from the partnership. The majority argues that withdrawal or mandatory buyout is a discrete issue that requires a specific submission. The arbitrator, on the other hand, approached the mandatory buyout, not as a separate issue, but as a possible resolution to be considered among a range of remedies available in a partnership dispute. Whether a buyout is viewed as the remedy sought or the nature of the dispute, we conclude for three separate reasons that the claimants' failure to specify buyout in its submission did not exclude it from consideration.

First, the submissions throughout the proceedings demonstrate the claimants' desire to terminate their partnership. In their demand for arbitration, the claimants described the nature of the dispute as *"Breach of fiduciary duty by partners of a partnership; self-dealing that benefits the managing part-ner, and other partners, but not the claimants."* The claimants requested damages and *"injunctive relief to prevent future self-dealing."* In their first statement of the case, submitted the week before the hearing, the claimants asked the arbitrator to award compensatory damages and attorneys' fees, to void the lease between EEC and the majority's corporation, and to dissolve the EEC Property Company Partnership. The claimants submitted this document with copies of all exhibits and an appraisal of the EEC building. The claimants' second statement of the case contained five pages of proposed alternative awards, including dissolution and sale, and compensatory damages and injunctive relief. The submissions were sufficient to allow consideration of buyout. *See Zelle v. Chicago & N.W. R. Co.*, 242 Minn. 439, 446–47, 65 N.W.2d 583, 589–90 (1954) (demands arising from controversy submitted to arbitration, "must be sufficiently described so as to be identifiable either from the contractual provision or with the aid of parol evidence" but do not require same level of specificity as a pleading); *see also Allen v. Heglund*, 30 Minn. 38, 40, 14 N.W. 57, 58 (1882) (arbitration demand "should be described sufficiently to be identified" but does not require same specificity as a pleading).

Second, the arbitrator expressly notified both the majority and the claimants that he was considering a buyout of the claimants' partnership interests. The arbitrator indicated the buyout would be based on the valuation method outlined in sections 5.06 and 5.07 of the EEC amended partnership agreement. The arbitrator asked both parties to respond to the proposed remedy. EEC opposed the claimants' withdrawal from the partnership, but outlined the conditions under which the majority would sell their interest to the claimants. The claimants' response, which was also sent to EEC, expressed their interest in the proposed buyout, but asked the arbitrator to complete the buyout over a shorter time period than specified in the partnership agreement.

Third, EEC waived its objection to consideration of a buyout when it failed to object to the arbitrator's proposal following the completion of the hearing. Under the com-

mercial arbitration rules of the American Arbitration Association that governed this proceeding, any party who proceeds after knowledge of noncompliance with any provision or requirement of those rules and who fails to object in writing is deemed to have waived an objection. Rule 38, American Arbitration Association, Commercial Arbitration Rules (1993). *See Hunter, Keith Industries, Inc. v. Piper Capital Management, Inc.,* 575 N.W.2d 850, 853 (Minn.App. 1998); *see also Ebasco Constructors, Inc. v. Ahtna,* 932 P.2d 1312, 1317 (Alaska 1997) (failure to object to introduction of new theory of liability waives claim that theory should not have been considered); *Fraund v. Design Ideas, Inc.,* 17 Conn.App. 280, 551 A.2d 1279, 1282 (1989) (both parties submitting posthearing evidence in arbitration under AAA commercial arbitration rules waives objection to considering evidence); *United Buying Service Intl. Corp. v. United Buying Service of N.E. New York, Inc.,* 38 A.D.2d 75, 327 N.Y.S.2d 7, 13 (1971) (by voluntarily submitting and litigating merits of matters not covered by arbitration agreement, parties waive agreement's limitations and give arbitrator jurisdiction); *Brzowski v. Md. Home Improvement Comm'n,* 114 Md.App. 615, 691 A.2d 699, 710 (1997) (posthearing letter is part of arbitration proceeding if parties respond on merits without raising procedural defects), *cert. denied,* 346 Md. 238, 695 A.2d 1227 (1997). *Compare Pennsy Supply, Inc. v. Nicholson Co.,* 321 Pa.Super. 475, 468 A.2d 808, 809 (1983) (trial court erred in determining that party who sent letter to arbitrator strongly objecting to acceptance of posthearing evidence waived right to raise this procedural defect on review).

### B. Notice of claim for waste of partnership assets

■ EEC also argues the claimants failed to submit the issue of "waste" to the arbitrator. The claimants' demand for arbitration expressly stated a claim for breach of fiduciary duty. Their subsequent statements of the case detail the alleged breaches, most of which related to the majority's execution of a below-market lease that threatened the assets of the partnership. The arbitrator's finding that the majority partners wasted partnership assets in executing this lease is closely related to the claims listed in the submission and to the governing partnership agreements. *See Littfin Lumber Co. v. Fasching,* 436 N.W.2d 791, 795 (Minn.App. 1989) (issues resolved by arbitrator clearly arose from the disputed agreement). The issue of waste is also closely related to EEC's counterclaim for damages due to claimants' decision to vacate their office space and failure to help find replacement tenants. The statement setting forth the nature of the dispute and the subsequent submissions provide an adequate basis for the arbitrator to consider waste as an issue in the dispute.

### II

■ Minnesota's arbitration statute contemplates equitable as well as legal remedies, but "the power exercised in fashioning the award must have its genesis either from the underlying contract, the arbitration clause itself, or the submission." *David Co. v. Jim W. Miller Constr.,* 444 N.W.2d 836, 841 (Minn.1989) (citing *Johnson v. American Family Mut. Ins. Co.,* 426 N.W.2d 419, 420 (Minn.1988)) (contract); *Children's Hosp. v. Minnesota Nurses Ass'n,* 265 N.W.2d 649, 652 (Minn.1978) (arbitration agreement); *Metropolitan Waste Control Comm'n v. City of Minnetonka,* 308 Minn. 385, 389, 242 N.W.2d 830, 832 (1976) (submission).

■ The majority claims that the arbitrator lacked the power to fashion a remedy that varies from the terms of the underlying partnership agreement. The claimants contend the broad arbitration clause contained in EEC's partnership agreement places no limits on the arbitrator's authority to fashion a remedy. They further argue that under AAA commercial arbitration rules, the arbitrator has the authority to "grant any remedy or relief that the Arbitrator deems just and equitable and within the scope of the agreement of the parties." Rule 43, American Arbitration Association Commercial Arbitration Rules (1993). *See David,* 444 N.W.2d at 842 (arbitration clause authorized arbitrators to decide "[a]ll claims, disputes and other matters in question * * * relating

to the Contract * * * or the breach thereof"). *Compare Metropolitan Waste Control Comm'n*, 308 Minn. at 389–90, 242 N.W.2d at 832–33 (submission required arbitrators to apply Commission's service access charges in fashioning remedy).

In analyzing whether the arbitrator exceeded his power by providing a mandatory buyout, we note at the outset that the claimants' demand for arbitration and subsequent submissions, together with the broad scope of the governing arbitration clause, granted the arbitrator broad powers in resolving the dispute. *See David*, 444 N.W.2d at 841 (parties may limit arbitrator's authority by contract or written submission, but absent such consensual limitations, arbitrators are final judges of both facts and law). *But see McKay v. McKay*, 187 Minn. 521, 525, 246 N.W. 12, 14 (1932) (agreement to arbitrate dispute over partnership accounts did not grant arbitrator authority to dissolve partnership and order sale of its assets); *Lee v. Tysdal*, 163 Minn. 355, 356, 203 N.W. 988, 989 (1925) (arbitrators exceeded scope of authority in awarding wages when parties requested only to settle accounting of dissolved partnership).

The specific variances from the partnership agreement that the majority points to as demonstrating an insufficient basis for the arbitrator's remedy are that the award (1) treats an option to buy as an obligation to buy and ignores the partners' agreement that a partner who voluntarily withdraws cannot compel a buyout; (2) accelerates the repayment period provided under section 5.08 of the partnership agreement from ten to three-and-a-half years, imposing a greater financial burden on the remaining partners; and (3) ignores the agreed-upon buyout price of $11,667 provided under Item 1.2 of the Buy–Sell Agreement.

We disagree with EEC's contention that the arbitrator's award contradicts the agreed-upon buyout price of $11,667 provided under Item 1.2 of the Buy–Sell Agreement. The Buy–Sell Agreement only covers the purchase price of a *deceased* partner. Amendment No. 2, executed one month later, contains a methodology for valuation of a partnership interest of a *withdrawing* or *deceased* partner. It is that valuation, set forth in sections 5.06, 5.07, and 5.08 of the partnership agreement as amended on July 11, 1989, that the arbitrator implemented.

We agree that the arbitrator's award does vary from the partnership agreement by compelling the buyout and accelerating the time period for payment. Despite these variances, however, several factors lead us to conclude the award has a basis in the underlying contract, the arbitration clause, and the submission.

First, as previously observed, under the arbitration agreement and governing AAA rules, the arbitrator had broad authority and no specific limitation in fashioning a remedy. *See David*, 444 N.W.2d at 842 (when parties could have limited arbitrator's authority by their agreement, either initially or in submission, but failed to do so, court will not "judicially restrict the powers of the arbitrators which the parties themselves have so broadly granted to them"). Second, the arbitrator fashioned the award to preserve the entity and avoid the more drastic step of dissolution, and, third, the award draws on specific contractual provisions in the partnership agreement, including sections 5.01, 5.07, and 5.08. Although the effect of the arbitrator's buyout provision appears to be disproportionate to the cause (the degree of waste committed), the facts underlying the waste demonstrate the essential inability of the partnership to function. By not making adequate efforts to rent out the claimants' space, the majority jeopardized the central function of the partnership. *See id.* (arbitrators acted within the broad scope of their authority by fashioning equitable remedy that placed obligation on the party responsible for the claim). In these circumstances, the arbitrator did not exceed his power by providing for the mandated buyout.

■ Finally, we address EEC's argument that the arbitrator erred by applying Minnesota's corporate dissolution statute, Minn. Stat. § 302A.751, subd. 2 (1996), to award damages for "waste." The claimants rely on dictum in *Pedro v. Pedro* to suggest that courts may apply Minn.Stat. § 302A.751, subd. 2, to partnerships. 489 N.W.2d 798, 801 (Minn.App.1992). But *Pedro* involved a

closely held corporation, rather than a partnership. Nonetheless, we disagree with EEC's assertion that "[t]he arbitrator stated that he was applying the corporate buyout statute." The arbitrator found that the actions constituted waste of partnership assets "within the concept of waste of corporate assets referred to in Minn.Stat. § 302A.751, subd. 1(b), pertaining to the *analogous* situation of a closely held corporation" (emphasis supplied). We find no error in the arbitrator's looking to analogous corporation law. Equally significant, however, is the basic tenet of arbitration that even when an award is affected by an error of law, that error does not provide a basis for vacating an arbitration award. *Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957).

### DECISION

The underlying agreement, the arbitration agreement, and the submissions provided the arbitrator with broad authority to fashion an award and did not restrict the type of relief that could be granted. The arbitrator's award of damages for waste and allowance of a mandatory buyout provision did not exceed the arbitrator's authority to consider the submitted issues or to fashion a remedy.

**Reversed and arbitration award reinstated.**