NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSEPH M. SCHMIDT, *Plaintiff/Appellee,*

*v.*

STEVE P. SCHMIDT, *Defendant/Appellant*

*And*

ZOE CRAIN, *Defendant/Appellee*

No. 1 CA-CV 12-0701

FILED 08-05-2014

Appeal from the Superior Court in Maricopa County
No.  CV2009-070395
The Honorable Eileen S. Willett, Judge

**AFFIRMED**

COUNSEL

Aiken Schenk Hawkins & Ricciardi, P.C., Phoenix
By Shawn K. Aiken, Robert C. Van Voorhees
*Counsel for Defendant/Appellant Steve P. Schmidt*

Jennings, Strouss & Salmon, P.L.C., Phoenix
By David Brnilovich
*Counsel for Plaintiff/Appellee*

Zoe Crain, Phoenix
*Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Patricia A. Orozco joined.

---

**G E M M I L L,** Judge:

**¶1** Steve P. Schmidt ("Steve")[1] challenges the superior court's confirmation of the arbitrator's award, arguing that the arbitrator exceeded his powers and miscalculated damages. For the reasons that follow, we affirm.

## BACKGROUND

### I. Lone Cactus, L.L.C. and East Meets West, Inc.

**¶2** Steve and his siblings, Joseph M. Schmidt ("Joseph") and Kathryn Crain ("Kathryn"), formed Lone Cactus Properties, L.L.C. (Lone Cactus), a limited liability company, in 1996. Each sibling initially held a one-third membership in Lone Cactus.

**¶3** Lone Cactus's principal asset was a commercial office building in Phoenix. When this building opened, a corporation previously formed and equally held by the three siblings, East Meets West, Inc. ("EMW"), moved its operations into one of the building's three suites. EMW has paid rent to Lone Cactus without the benefit of a written lease.

**¶4** Kathryn died in 2004. Her one-third membership in Lone Cactus passed to her minor daughter, Zoe Crain ("Zoe"), and was held by her widower, Timothy Crain ("Timothy"), under the Uniform Gift to Minors Act, Arizona Revised Statutes ("A.R.S.") sections 14-7651 to -7671. Meanwhile, Kathryn's one-third equity interest in EMW transferred to Timothy.

---

[1] For clarity and brevity, we refer to the parties by their first names because certain parties have the same last names. No disrespect is intended by the use of first names.

¶5　　　　　In 2001, Joseph sold his remaining stock in EMW to his fellow EMW owners. As a result, Steve and Timothy owned shares in EMW, while Zoe, Steve, and Joseph held one-third memberships in Lone Cactus. Steve served as EMW's sole officer and director and Lone Cactus's manager starting in 2004.

## II.　　The Arbitration

¶6　　　　　Joseph filed a complaint in superior court alleging, among other claims, that Steve had leased a Lone Cactus suite to EMW at below market rates, and had failed to collect escalation and other fees from EMW that it had charged other tenants. The complaint included (1) a derivative claim for unpaid rent EMW allegedly owed Lone Cactus; (2) direct claims on theories of breach of fiduciary duty, conversion, accounting, and freeze out against Steve and Steve's spouse; (3) an unjust enrichment/constructive trust claim against Steve, Steve's spouse, and EMW; and (4) a claim for winding up and dissolution of Lone Cactus against Steve and Zoe.

¶7　　　　　In accordance with A.R.S. § 12-1502(A),[2] Steve successfully moved to compel arbitration pursuant to paragraph 7.5 of the Lone Cactus Operating Agreement. According to Steve's motion, the Operating Agreement "broadly provides for arbitration" and "the complaint arises out of the Operating Agreement." EMW also requested arbitration in its answer, but Steve initially contended that Joseph would have to pursue claims against EMW in superior court. The parties subsequently signed a stipulation stating that the arbitrator would determine "all issues of law and fact that are framed by the Complaint" including claims against EMW.

¶8　　　　　Following a four-day hearing, the arbitrator issued an award and findings. The arbitrator concluded that Steve had failed to discharge his managerial obligations under the Operating Agreement to the extent he exercised his judgment to benefit EMW at the expense of Lone Cactus. Specifically, Steve failed to charge EMW for rent escalation, late fees, and common area use fees but imposed these charges on other tenants. As a result, the arbitrator held Steve liable not only to Joseph, but also to Zoe, for breach of the implied covenant of good faith and fair dealing.

---

[2] Because the arbitration commenced before January 1, 2011, the Uniform Arbitration Act, A.R.S. §§ 12-1501 to -1518, applies rather than the Revised Uniform Arbitration Act. *See* A.R.S. § 12-3001 historical and statutory note (Supp. 2012).

¶9 The arbitrator accordingly awarded Zoe and Joseph $141,264.52 in lease underpayments, and awarded Lone Cactus $49,929.54 due on an EMW promissory note. In the event EMW continued to lease space from Lone Cactus, the arbitrator directed that EMW and Lone Cactus document any such lease with a written contract. Finally, the arbitrator ordered the Lone Cactus members to select a new manager in accordance with the Operating Agreement.

### III. Confirmation of the Arbitration Award

¶10 Joseph and Zoe applied for the award's confirmation pursuant to A.R.S. § 12-1511. After briefing, the superior court granted the application. It then awarded attorneys' fees and costs and filed a signed judgment.

¶11 This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

### DISCUSSION

¶12 This court reviews the superior court's confirmation of an arbitration award in the light most favorable to upholding its decision. *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13, 277 P.3d 208, 211 (App. 2012). We review de novo matters of statutory interpretation. *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 4, 250 P.3d 236, 238 (App. 2011).

¶13 Judicial review of arbitration awards is severely limited. *Creative Builders, Inc. v. Ave. Devs., Inc.*, 148 Ariz. 452, 456, 715 P.2d 308, 312 (App. 1986). "Except for certain well-defined circumstances . . . the trial court has no authority to modify an arbitration award, even though the trial court is convinced that the arbitrator[] [has] erred in [his] resolution of factual or legal issues." *Id.*

¶14 In Arizona, parties opposing an arbitration award can challenge it only on grounds defined by statute. *See Smith v. Pinnamaneni*, 227 Ariz. 170, 177, ¶ 24, 254 P.3d 409, 416 (App. 2011). Steve contends that the superior court erroneously confirmed the award because the arbitrator exceeded his powers under A.R.S. § 12-1512(A)(3) and his allocation of damages constituted a mathematical error under § 12-1513(A)(1).

### I. Steve Is Not Entitled To Relief Under A.R.S. § 12-1512(A)(3).

4

**¶15**          This court presumes that the arbitrator decided only those issues submitted for arbitration. *Einhorn v. Valley Med. Specialists*, *P.C.*, 172 Ariz. 571, 573, 838 P.2d 1332, 1334 (App. 1992). As the party seeking to vacate the award, Steve has the burden of proof on this issue. *Pawlicki v. Farmers Ins. Co.*, 127 Ariz. 170, 173, 618 P.2d 1096, 1099 (App. 1980).

**¶16**          The parties' agreements define the scope of the arbitrator's authority. *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 182, 525 P.2d 309, 313 (1974). The arbitrator's interpretation of such documents is final, unless the decision extends the arbitration beyond the matter submitted. *Einhorn*, 172 Ariz. at 573, 838 P.2d at 1334. Paragraph 7.5 of the Lone Cactus Operating Agreement provides:

> <u>Settlement of Discomforts and Disputes</u>. Any dispute or discomfort arising out of or in connection with this agreement, including disputes between or among the members, shall be settled by the negotiation, mediation and arbitration provisions of the American Arbitration Association or other professional arbitration association or organization.

This language is broad. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (characterizing a similar contractual provision covering "claims and controversies arising out of or relating to this Agreement" as "a broad arbitration clause"). Because the arbitration provision expressly refers to the American Arbitration Association ("AAA"), and the record does not reveal that the parties objected to those rules, we conclude that the AAA Rules are binding on the parties. *See A.P. Brown Co. v. Superior Ct. In & For Pima Cnty.*, 16 Ariz. App. 38, 40, 490 P.2d 867, 869 (1971). AAA Rule R-47(a) states: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."

## A.     The Stipulation Did Not Limit the Arbitrator's Authority under Paragraph 7.5 and the AAA Rules.

**¶17**          Notwithstanding the broad grant of authority under the Operating Agreement and AAA Rule R-47(a), Steve argues that the parties'

subsequent stipulation limits the scope of the arbitration clause and, consequently, the arbitrator's authority to grant relief under that clause. According to Steve, the arbitrator exceeded his authority by adjudicating a cause of action not asserted in the complaint, awarding damages to Joseph and Zoe instead of Lone Cactus, directing Lone Cactus and EMW to put the lease in writing, and ordering the members of Lone Cactus to elect a new manager.

¶18         An arbitrator cannot resolve issues beyond the scope of a submission agreement. *See generally Clarke v. ASARCO, Inc.*, 123 Ariz. 587, 589, 601 P.2d 587, 589 (1979) (holding that the arbitrator's authority was limited by the parties' agreement to arbitrate items "covered" in only one paragraph). Even when their original contract contains a broad arbitration clause, the parties may restrict or broaden the issues contemplated by that clause. *Greenspan v. Ladt, L.L.C.*, 111 Cal. Rptr. 3d 468, 487 (App. 2010).

¶19         In the absence of an express limitation, Arizona courts do not assume that the parties intend to limit the arbitration's scope. *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 258-59, 705 P.2d 490, 498-99 (App. 1985) (declining to construe a clause requiring arbitration of "any controversy" as applicable only to a partial breach of contract). We view all applicable provisions as a whole. *Saguaro Highlands Cmty. Ass'n v. Biltis*, 224 Ariz. 294, 297, ¶ 10, 229 P.3d 1036, 1039 (App. 2010) (reconciling the arbitration provisions in a restrictive covenant).

¶20         Other courts have taken this approach when construing the arbitration agreement along with relevant submissions. *See Hecla Min. Co. v. Bunker Hill Co.*, 617 P.2d 861, 868 (Idaho 1980) (analyzing the parties' submissions, along with the original agreement, in determining the arbitrator's authority, and concluding that the resulting grant of authority was very broad absent "express limitation"); *accord Wilcox Co. v. Bouramas*, 392 N.E.2d 198, 202 (Ill. Ct. App. 1979) (in the absence of an express reservation, the parties are presumed to agree that the arbitrator's authority extends to everything necessary to the ultimate decision); *cf. French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 909 n.9 (9th Cir. 1986) (holding that letter containing reservation of "the right to revoke the signing of the Submission Agreement" did not preclude the court from interpreting the stipulation and submission agreement as allowing amendment of the underlying complaint). A narrow interpretation of a submission "negates the very purpose of submitting disputes to arbitral resolution." *Hecla*, 617 P.2d at 868.

¶21        Applying these principles, we find no express limitation or exception in the parties' stipulation.  It provided that "all causes of action alleged in [Action"] would "be decided in this Private Arbitration," with the complaint serving as the demand for arbitration.   Further, the stipulation provided that the arbitrator "has the power to decide all issues of law and fact that are framed by the Complaint in CV2009-070395 and that the Arbitrator has the power to grant the relief prayed for in CV2009-070395."   In addition, the arbitrator would adjudicate the claims against EMW "as derivative claims for the benefit of [Lone Cactus]."

¶22        The parties drafted the stipulation in an effort to settle their dispute concerning the arbitrator's authority to resolve claims against EMW.  The document does not refer to, let alone expressly attempt to limit, the arbitrator's authority under the Paragraph 7.5 arbitration clause or the AAA Rules.  It provides for derivative relief against EMW, but does not expressly preclude the award of other relief.  On this record, we cannot say that the parties intended to withdraw the broad scope of authority conferred in Paragraph 7.5 and the AAA Rules.  *See Moseley v. Brewer*, 139 Ariz. 540, 542, 679 P.2d 563, 565 (App. 1984) (holding that the arbitrator had authority to independently calculate a fee award in the absence of a provision limiting the arbitrator to selecting one of two amounts provided by the parties); *see generally Advanced Micro Devices, Inc. v. Intel Corp.,* 9 Cal. 4th 362, 383, 384, 387 (1994) (holding that, "unless expressly restricted by the agreement of the parties," an arbitrator has discretion to fashion remedies so long as they rationally relate to the contract and breach; nothing in the order of reference, arbitration clause, or rules prevented the arbitrator from devising a remedy consonant with his construction of the contract's implied covenants).

¶23        Steve invokes *Allstate Insurance Co. v. Cook*, but his reliance upon that case is misplaced.  21 Ariz. App. 313, 519 P.2d 66 (1974).  The *Cook* court analyzed an arbitration clause which did not incorporate the AAA rules.  *Id*. at 314, 519 P.2d at 67.  *Cook* held that the arbitrator had no authority to resolve a coverage dispute between the insurer and insured, because the insurance policy's arbitration clause authorized arbitration only concerning the insured's right to recover damages from an uninsured motorist.  *Id.* at 315, 519 P.2d at 68; *Scruggs v. State Farm Mut. Auto Ins. Co.,* 204 Ariz. 244, 247, ¶ 10, 62 P.3d 989, 992 (App. 2003) (same).  In the instant case, the arbitration clause was broad—it allowed for any dispute arising out of the agreement to be settled by the arbitration provisions of the AAA, unlike the agreement in *Cook*.  The stipulation placed no limits on the broad clause.

¶24 Equally unavailing is Steve's reliance upon other Arizona authorities. None of these cases concern an arbitrator's authority under a broad arbitration clause incorporating the AAA rules. *See Goldsberry v. Hohn*, 120 Ariz. 40, 43-44, 583 P.2d 1360, 1363-64 (App. 1978) (upholding denial of confirmation for award concerning the value of services because arbitration agreement's primary subject was the contingent fee agreement's validity, and party's petition and testimony were confined to that issue); *Smitty's,* 22 Ariz. App. at 180, 525 P.2d at 311 (construing a clause requiring arbitration of a rental adjustment and finding the arbitrators had not exceeded their authority); *Saguaro Highlands*, 224 Ariz. at 296-98, ¶¶ 7-14, 229 P.3d at 1038-40 (interpreting provisions in the restrictive covenants on whether arbitration was required for a claim concerning construction of an improvement made by a homeowner).

**B.      The Complaint's Allegations Provide A Basis For The Relief Granted.**

¶25 Even assuming that the stipulation limited the arbitrator to the confines of the complaint, we find that he did not exceed that authority. The arbitrator found: "[w]hile labeled differently, most of the claims here really amount to assertions that [Steve] breached his obligations under the Operating Agreement." One such obligation under the Operating Agreement – and every contract – was the implied covenant of good faith and fair dealing, which prevents a party from impairing the rights of another party to receive the benefits flowing from the contractual relationship. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153-54, 726 P.2d 565, 569-70 (1986).

¶26 The complaint supports the arbitrator's view that Joseph's claims arise out of the Operating Agreement and include a breach of the implied covenant of good faith and fair dealing. For example, Joseph alleged that Steve had breached a fiduciary duty by failing to discharge his obligations under the Operating Agreement. Further, Joseph's request for attorneys' fees states that the complaint arises out of contract. Because Lone Cactus was not a party to the Operating Agreement, the arbitrator reasoned that relief for breach of that contract would necessarily accrue to its members. And because these allegations arose out of or in connection with the Operating Agreement, the superior court properly concluded that they were subject to arbitration. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (holding that breaches of an agreement and of a fiduciary duty were subject to arbitration even though

they arose under a narrower arbitration clause covering claims "arising hereunder"). Also, Steve previously acknowledged in his demand for arbitration that "the complaint arises out of the Operating Agreement of [Lone Cactus.]" Having asserted this characterization of the complaint, Steve cannot disclaim it once the arbitrator adopts it as a basis for relief.

¶27 Nor do we believe that the arbitrator's authority was as limited as Steve insists. To the extent that the arbitrator recharacterized some complaint allegations as stating a breach of the implied covenant of good faith and fair dealing, the Operating Agreement, submissions, and AAA Rule R-47(a) allowed him to do so. *Cf. SCM Corp. v. Fisher Park Lane Co.*, 358 N.E.2d 1024, 1028 (N.Y. Ct. App. 1976) (holding that arbitrator had authority to reform a contract, and explaining that arbitrators are charged with fashioning relief in settings "free from the requirements and expectations familiar to judicial proceedings with respect both to the formulation of pleadings and causes of action and to historical and current legal theories as to the availability of remedies").

¶28 Finally, we note the arbitrator's finding that Joseph "raised breaches of the Operating Agreement as a source of liability during the course of the arbitration." Accordingly, it appears that the parties had submitted the breach of contract issue during the hearing. *See Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1136 (9th Cir. 2003) (holding that an arbitration panel could award fees even if not otherwise authorized by law so long as "both parties submitted the issue to arbitration"). In the absence of a transcript of the arbitration hearing, we have no basis to conclude otherwise.

## C. The Arbitrator Did Not Exceed His Authority By Granting Relief To Zoe.

¶29 Likewise, we reject Steve's claim that the parties' stipulation precluded the arbitrator from granting relief to Zoe. The operating agreement expressly provided that any dispute arising out of or in connection with the agreement must be settled by arbitration. And the stipulation between the parties merely reaffirmed the parties' decision to arbitrate the current claims so as to avoid multiple or inconsistent results. At the time the parties signed the stipulation, Zoe had filed no claim against Steve or any other party. Consequently, Steve reasons that Zoe's claim is not covered by the stipulation and is beyond the arbitrator's authority. Zoe asserts that she did not bring a claim against Steve before the arbitration order because her custodian, Timothy, and Steve had common counsel.

After obtaining separate counsel, Zoe asserted her cross-claim in the arbitration, adopting Joseph's allegations. On this point, the parties never expressly precluded amending the complaint to allow for Zoe's cross-claim. In light of this, we conclude that the arbitrator had authority to permit a cross-claim and grant relief to Zoe. *See French*, 784 F.2d at 909.

**D.** **The Arbitrator Did Not Exceed His Authority By Ordering EMW And Lone Cactus To Reduce Future Leases To Writing And Ordering Lone Cactus To Select A New Manager.**

¶30 Steve further argues that the arbitrator had no authority to order the appointment of a new manager and require the parties to document any future lease agreements. The Operating Agreement directs that the managing member position rotate annually. Requiring the selection of a new manager amounts to a specific performance of that agreement. Under Rule R-47(a) alone, the arbitrator had authority to grant such relief. *See* AAA Rule R-47(a). Indeed, the arbitrator had authority to grant even broader relief. *Cf. Malekzadeh v. Wyshock*, 611 A.2d 18, 22-23 (Del. Ch. Ct. 1992) (holding that the arbitrator had authority, in a dispute between general and limited partners, to delegate managerial duties to an independent third party even though the contract assigned those duties to the general partner).

¶31 Furthermore, the requirement that EMW and Lone Cactus document any future lease agreements was a remedy designed to address conduct raised by the complaint. Joseph had demanded an accounting, as he was unable to determine the amounts of damage resulting from EMW's nonpayment of rent and other charges. Requiring a written lease would facilitate accountability for charges to be paid by EMW. The arbitrator did not require the parties to continue the lease arrangement; rather, he directed them to reduce any future agreement to writing, just as Lone Cactus had with its other tenants.

¶32 This relief was also consistent with the arbitrator's authority under Paragraph 7.5 and Rule R-47(a). In *EEC Property Co. v. Kaplan*, 578 N.W.2d 381, 386 (Minn. Ct. App. 1998), an arbitrator similarly exercised broad remedial authority under the AAA Rules by permitting members to withdraw from a partnership via a mandated buyout. The Minnesota court found this relief within the arbitrator's authority, even though the partnership agreement did not expressly authorize it. *Id.* The court reasoned that "[b]y not making adequate efforts to rent out the claimants' space, the majority jeopardized the central function of the partnership." *Id.*

The parties could have limited the arbitrator's authority, either in the agreement initially or in submissions, but chose instead to incorporate the AAA rules. *Id.*

**¶33**        The same logic applies here and supports the arbitrator's grant of less sweeping relief. *See id.; see also In re Astey*, 189 N.Y.S.2d 2, 4-5 (Super. Ct. 1959) (holding that arbitrator is authorized under a broad clause to grant equitable relief even though it could not properly be awarded in a court, including providing for successive options); *accord Wilcox*, 392 N.E.2d at 202 (in the absence of an express reservation, the arbitrator had authority to resolve fiduciary duty and good faith contract review claims, and was authorized to address "everything, both as to law and fact, which is necessary to the ultimate decision").

## II.     Steve Is Not Entitled To Relief Under A.R.S. § 12-1513(A)(1).

**¶34**        Steve alternatively contends that the arbitrator made mathematical errors in awarding all damages to Joseph and Zoe. Under A.R.S. § 12-1513(A)(1), the court shall modify or correct an award if "[t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award."

**¶35**        According to Steve, the damages should go to Lone Cactus. This would allow Steve to share in the award by virtue of his one-third interest in Lone Cactus. We conclude, however, that the decision to award damages to Zoe and Joseph was not a miscalculation within the meaning of A.R.S. § 12-1513(A)(1). It reflected the arbitrator's considered choice not to grant Steve a benefit for self-dealing. *See Palmer v. Duke Power Co.*, 499 S.E.2d 801, 808 (N.C. Ct. App. 1998) (holding that the failure to include pre-judgment interest in an award was not a mathematical error)

**¶36**        Assuming, without deciding, that the award is erroneous, it is not subject to attack "merely because one party believes that the arbitrator[] erred with respect to factual determinations or legal interpretations." *Hirt v. Hervey*, 118 Ariz. 543, 545, 578 P.2d 624, 626 (App. 1978); *Smitty's*, 22 Ariz. App. at 182, 525 P.2d at 313 (finding that the trial court erred in modifying an arbitrator's award based upon an alleged error of law); *see also Pawlicki*, 127 Ariz. at 173, 618 P.2d at 1099 (holding that the trial court erroneously set aside an arbitration award based upon an arbitrator's incorrect findings of fact).

## CONCLUSION

¶37 We affirm the superior court's confirmation of the arbitrator's award. In addition, we award Joseph and Zoe attorneys' fees and costs on appeal pursuant to Paragraph 7.6 of the Operating Agreement, contingent upon their compliance with Rule 21(a) of the Arizona Rules of Civil Appellate Procedure. We deny Steve's request for attorneys' fees and costs on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: gsh