Bama's Best Housing, Inc. ("Bama's Best"), and Gary Taunton appeal from the trial court's denial of their motion to compel Stephen Hodges to submit his claims against them to binding arbitration. We reverse and remand.
 Facts and Procedural History
In November 2000, Hodges, who wanted to purchase a mobile home, met with Taunton, an employee of Bama's Best. Hodges wanted to make a "land-home purchase," which means that Hodges wanted *Page 301 
to secure financing for both the mobile home and the real estate upon which the mobile home would be situated. On December 3, 2000, Hodges executed a real estate purchase and sales agreement pursuant to which he agreed to purchase a certain parcel of real estate if he was able to secure financing for the purchase. Thereafter, Hodges executed credit applications, and Taunton began communicating with various lenders to obtain financing for Hodges's land-home purchase. Although Hodges was dissatisfied with the amount of financing available and the interest rates Taunton had offered him, he told Taunton the type of mobile home he wanted and on January 8, 2001, Taunton ordered a Fleetwood Westfield Classic, Model 6763T, mobile home from Fleetwood Homes of Georgia, Inc. After Fleetwood delivered the home, Taunton and Hodges discovered that the home did not comply with several of Hodges's specifications. Once Fleetwood had corrected the deficiencies, Taunton contacted Hodges about completing the transaction. Because Hodges once again expressed concern about the financing and the available interest rates, Taunton contacted the lenders again in an attempt to secure more favorable financing for Hodges.
Several days later, Hodges contacted Taunton and told him that he wanted to look elsewhere to see if he could secure a better price or better financing. Because Hodges had not signed a contract to purchase the Fleetwood home, Bama's Best began to show the home to other customers, and on February 10, 2001, another customer purchased the home. Several days later, Hodges telephoned Taunton and told him that he still wanted to purchase the Fleetwood home because he had been unable to secure a better price from another dealer. Taunton ordered a home from Fleetwood that was identical to the home Hodges had previously ordered, and Taunton again attempted to secure financing to meet Hodges's needs.
On March 12, 2001, Hodges signed a contract to purchase a Fleetwood Westfield Classic, Model 6763T, mobile home from Bama's Best.[1]
Taunton stated that he informed Hodges on March 12, 2001, that Hodges would be required to sign an arbitration agreement and according to Taunton, Hodges never expressed any unwillingness to do so. Conversely, Hodges contended that Taunton did not tell him that he would be required to sign an arbitration agreement. On March 23, 2001, Taunton mailed a copy of the arbitration agreement to Hodges for his signature. Although Hodges admits that he received the arbitration agreement, he did not sign and return the agreement to Taunton.
On March 31, 2001, Taunton and a delivery crew arrived at Hodges's property to deliver and set up the mobile home. At that time, Taunton presented Hodges with another copy of the arbitration agreement and requested that Hodges execute the document before the delivery crew set up the mobile home. Hodges became very angry, yelled at Taunton, and refused to sign the arbitration agreement. Because Hodges refused to sign the agreement, Taunton advised the delivery crew not to set up the home, and Taunton left. After Taunton left, Hodges spoke with the delivery crew, which was still on the the property, *Page 302 
and Hodges then telephoned Taunton and consented to sign the arbitration agreement. Hodges signed the agreement, and the mobile home was delivered to him.
On April 19, 2001, Hodges sued Bama's Best and Taunton, alleging various counts of fraud, "continuing fraud," and breach of contract. Bama's Best and Taunton moved to stay the proceedings and to compel arbitration. In support of their motion, they submitted the affidavit of Lewis Holmes, the general manager of Bama's Best, and a copy of the arbitration agreement signed by Hodges. Hodges opposed the motion, submitting his own affidavit for consideration by the trial court. On July 13, 2001, the trial court held a hearing and allowed Bama's Best and Taunton until July 20, 2001, to submit supplemental briefs and evidence. The defendants filed a supplemental brief, Taunton's affidavit, and the file Bama's Best had compiled regarding the Hodges purchase. On July 31, 2001, the trial court summarily denied the motion to compel arbitration. This appeal follows.
 Analysis "A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration.[2] See Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala. 2000). This Court reviews de novo a trial court's denial of a motion to compel arbitration. Id. at 742-43."
Tefco Finance Co. v. Green, 793 So.2d 755, 758 (Ala. 2001).
Bama's Best and Taunton argue that the trial court erred by denying their motion to compel arbitration, maintaining that Hodges's claims fell within the broad range of the arbitration agreement. In response, Hodges contends that the arbitration agreement did not apply to the home he purchased because, he says, his claims arose out of Bama's Best and Taunton's failure to deliver the first mobile home he had ordered and the arbitration agreement he signed references the serial number of the second mobile home. Additionally, Hodges contends he should not be bound by the arbitration agreement because, he says, he signed the document as a result of "economic duress."
The arbitration agreement Hodges executed provides, in pertinent part:
 "This agreement for binding arbitration is this dated entered between Stephen Hodges, hereinafter called `Buyer,' and Bama's Best Housing, A Corporation, hereinafter called `Seller.'
 "Buyer has this date purchased from Seller a mobile home described as follows: Fleetwood Westfield 6763T, S.N. 48287, Serial Number 48287 [sic]. As part of the consideration for the sale of said mobile home, Buyer and Seller hereby enter into this agreement for binding arbitration, each intending to be mutually bound by the terms of this agreement.
 "Buyer and Seller acknowledge that the said mobile home is a product manufactured and sold in interstate commerce and that the provisions of the Federal Arbitration Act are applicable to this contract. The parties further acknowledge that the sale of the said mobile home is a transaction involving interstate commerce.
 "Buyer and Seller agree, covenant and consent, that any and all controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of *Page 303 
covenant, warranty, misrepresentation, rescission, any breach of contract, or other tort, shall be settled solely by arbitration in accordance with the applicable Rules of the American Arbitration Association then in effect, and that judgement [sic] upon award rendered by the arbitrators may be entered in and enforceable by any court of competent jurisdiction. Buyer and Seller further agree that they shall submit any and all disputes, controversies and cases arising out of the negotiations for the sale and service of the mobile home, whether in the nature of contract, warranty, or tort, to the decision of a three-person arbitration panel. Buyer and Seller agree that they shall be bound by the determination of the said arbitration panel. . . .
 "Buyer and Seller agree that this agreement shall cover any and all disputes, claims or controversies between them, including but not limited to warranty claims, service or repairs disputes, set-up or installation disputes, breach of contract, misrepresentations claims, rescission or revocation, loss of use, claims involving fitness for a particular purpose of merchantability, and all other claims arising out of or any way related to the sale and service of the said mobile home."
(Emphasis added.)
Hodges maintains that his claims concern only the negotiations and the delivery delays related to the first Fleetwood mobile home he ordered. However, we have held that where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of or relating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement. See Reynolds Reynolds Co. v. King Autos., Inc.,689 So.2d 1, 2 (Ala. 1996) (citing Old Republic Ins. Co. v. Lanier,644 So.2d 1258 (Ala. 1994)). The arbitration agreement Hodges signed clearly states that all claims or controversies arising out of or in any way relating to the sale of the mobile home and the negotiations leading up to that sale are subject to arbitration. Because Hodges's claims relate to his desire to purchase but one mobile home, and because the defendants' alleged failure to deliver the first home led to Hodges's purchase of the second home, we find that his claims, even though they concern the first mobile home, arise out of or relate to the sale of the second home. See generally, Reynolds Reynolds Co., 689 So.2d at 3.
Finally, Hodges argues that the arbitration agreement should not apply because, he says, he was under "economic duress" when he signed it. Specifically, Hodges asserts that because he was required to sign the arbitration agreement as a condition to receiving the second mobile home, he had no meaningful choice in whether to agree to arbitration. Hodges cites Ex parte Early, 806 So.2d 1198 (Ala. 2001), as authority for his claim that he signed the arbitration agreement involuntarily and under economic duress. In Early, the plaintiffs had made a partial deposit of $4,000 toward the purchase of a mobile home. When the plaintiffs informed the defendant that they would not sign an arbitration agreement, the defendant allegedly told them that they could not purchase a mobile home without signing the agreement and that, if they declined to purchase the home, the plaintiffs would forfeit their $4,000 down payment. A plurality of this Court held that the record was insufficient to establish whether the trial court had conducted the necessary hearing to determine whether the plaintiffs had signed the arbitration agreement under economic duress. We issued a writ of mandamus directing the trial court *Page 304 
to vacate its order compelling arbitration and to conduct further proceedings to determine whether there were genuine issues as to whether the agreement to arbitrate was entered into involuntarily and under economic duress. We find Early to be distinguishable from the facts of this case, however, because Hodges does not allege that he had made a down payment on the first mobile home that he would forfeit if he failed to sign the agreement or that Taunton told Hodges that he would forfeit any money or property by refusing to execute the arbitration agreement.
Because we have determined that the arbitration agreement was applicable to Hodges's claims relating to the mobile home and that he has failed to demonstrate a genuine issue concerning whether he executed the arbitration agreement involuntarily and under economic duress, we hold that the trial court erred by refusing to grant Bama's Best and Taunton's motion to compel arbitration.
REVERSED AND REMANDED.
Houston, See, Lyons, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] Although Hodges contracted to purchase the Fleetwood home on March 12, 2001, Bama's Best and Taunton allege that he did not execute the final loan documents until August 17, 2001, several months after this action was commenced. Although the record does not contain any evidence establishing the exact date on which Hodges executed the final loan documents, Taunton testified that as of the date of his affidavit, July 20, 2001, Hodges had not yet executed the final documents.
[2] See Rule 4(d), Ala.R.App.P., effective October 1, 2001. By that amendment an order either granting or denying a motion to compel arbitration is reviewable by appeal.