Serra Chevrolet, Inc. ("Serra"), and World Omni Financial Corporation ("Omni"), the defendants in an action pending in the Jefferson Circuit Court, appeal from an order denying their motions to compel arbitration of an action against them commenced by Scott D. Hock. We reverse and remand.
On May 27, 2003, Hock filed a complaint against Serra and Omni, alleging, in pertinent part:
 "2. The Defendant, [Serra], on information and belief is an Alabama corporation which has its principal place of business in Birmingham, Alabama. [Hock] alleges that Serra conducts substantial business activities within Jefferson County and the State of Alabama, including an alleged contractual relationship between the parties herein.
 "3. The Defendant, [Omni], on information and belief is a Florida corporation and a national leasing corporation which has its principal place of business in Deerfield Beach, Florida. [Hock] alleges that [Omni] has substantial leasing activities within Jefferson County and the State of Alabama, including an alleged contractual relationship between the parties herein.
 "4. On March 22, 1998, [Hock] entered into a lease agreement with Serra through which he leased a 1998 Chevrolet pickup truck. The lease agreement had a term of 51 months and allowed the truck to be driven fifteen thousand (15,000) miles per year. In addition, the lease required no disposition fee. A copy of the lease agreement which [Hock] signed is attached as Exhibit A [`the Hock lease'].[1]
 "5. Pursuant to the terms of the agreement, the lease was assigned to [Omni] on March 22, 1998. Following the execution of the lease, [Hock] timely made each and every payment under the contract.
 "6. On May 14, 2002, [Hock] spoke on the telephone with Michele (last name unknown) . . . a representative of [Omni], who solicited [Hock] to extend the lease or to purchase the truck. Michele confirmed that [Hock's] lease term was 51 months and the lease allowed 15,000 miles per year for a total milage allowance of 63,750. [Hock] did not want to extend the lease.
 "7. On June 27, 2002, [Hock] returned the truck to Serra where it was inspected. The mileage was noted [to be] 61,764. A copy of the inspection odometer statement is attached as Exhibit B.
 "8. On or about July 19, 2002, [Hock] received from [Omni] a `lease termination invoice' stating $1,568.44 due for `excess miles' and `disposition fee' [the `net termination liability']. A copy of the invoice is attached as Exhibit C.
 "9. On July 30, 2002, after [Hock] disputed the above charges, [Omni] mailed to [Hock] a copy of a lease agreement, which is attached as Exhibit D. This lease purports to limit the truck's *Page 846 
mileage to twelve thousand (12,000) miles per year and impose a `disposition fee' [`the Serra-Omni lease'].[2] The signature of Exhibit D is a forgery. [Hock] did not sign Exhibit D and [Hock] did not authorize any other person to sign his name to any such lease agreement.
 "10. On August 8, 2002, and October 11, 2002, [Hock] through counsel advised [Omni] that Exhibit D was a forgery.
 "11. On November 22, 2002, [Omni] advised [Hock] that the original lease it received from Serra in March of 1998 `included errors' and the lease was returned to Serra `to be corrected.' (A copy of the November 22, 2003, letter is attached as Exhibit E). [Omni] claims it received the `corrected contract' on April 1, 1998, and that this is the contract [it] is attempting to enforce. [Hock] was neither notified of the purported errors nor advised that changes were made to the lease. [Hock] approved no changes to the lease.
 "12. [Omni] continued to bill [Hock] for the $1,568.44 fees. [Hock] disputed the debt and made a claim with [Omni] indicating the fraud which had transpired. [Hock] never authorized the changes to the lease contract. Upon making the fraud claim, [Omni] allegedly undertook an investigation. The extent of the investigation, however, was to advise [Hock] about the changed contract it received from Serra. Based upon the incomplete and inaccurate information [Omni] received from Serra, [Omni] summarily denied the fraud claim made by [Hock]. Beginning in early 2003 and continuing through the present, [Omni] has falsely and inaccurately made publications of false credit information relating to [Hock] to various credit reporting agencies, including but not limited to Equifax. Following the November 22, 2002, denial of the fraud claims made by [Hock], [Omni] began to issue negative credit reporting information relating to [Hock]. [Hock] alleges that [Omni] failed to maintain commercially reasonable practices relating to the extension of credit to potential customers. Despite repeated requests by [Hock] to correct this situation, [Omni] failed and refused to retract the negative reports. Further, the failure to investigate the fraud claim in an appropriate manner exhibited a callous disregard for the rights of [Hock]. [Hock] alleges that the basic premise surrounding [Omni's] investigation is that [Hock] is a liar; [Omni] refused to accept the truthfulness of any of [Hock's] statements, even when offered under oath. [Hock] alleges that the conduct of [Omni], through the publication of knowingly false information, was willful and malicious."
(Emphasis added.)
Hock sought damages on theories of defamation, negligence, suppression, fraud, and conspiracy to commit fraud. Regarding the fraud and conspiracy claims, Hock alleged that Serra and Omni "misrepresent[ed] to [him] that the lease agreement [Hock] signed . . . had a term of 51 months and allowed the truck to be driven fifteen thousand (15,000) miles per year with no disposition fee," and that they "worked in concert to allow the original lease dated March of 1998 `to be corrected,' when in fact [Serra and Omni] fraudulently altered the terms of the March 1998 lease and forged [Hock's] name thereto." Hock also sought declaratory and injunctive relief. More specifically, he sought a judgment *Page 847 
declaring, in effect, that the second lease, which Hock had not signed ("the Serra-Omni lease"), was fraudulent and void, that the provisions of the initial lease, which Hock had signed ("the Hock lease"), had been fully executed, and that the execution of the Hock lease had extinguished his obligations to Serra and Omni.
Serra and Omni each moved to compel arbitration of the dispute based on an arbitration provision, which stated, in pertinent part:
 "Except for an action to obtain possession of the Vehicle or other property covered by this Lease, which action is specifically excluded from this Paragraph, if any other dispute, controversy or claim, involving any Lessee, Co-Lessee, any Lessor or Assignee, or any employee, agent or affiliate of any of the foregoing persons, arises out of or relates to this Lease, or the breach of this Lease, including but not limited to the negotiation and provisions of the Lease and the leasing of the Vehicle pursuant to the Consumer Leasing Act and Regulation M., Equal Credit Opportunity Act, Fair Credit Reporting Act or any other federal or state consumer protection and/or disclosure and/or other federal, state or local statute, regulation or common law (each a `Dispute'), the parties agree that any unresolved Disputes shall be submitted to binding arbitration. . . ."
(Emphasis added.) This provision appeared in the Serra-Omni lease on which Serra and Omni rely, and in the Hock lease, which Hockadmittedly signed.
After the trial court denied the motions to compel arbitration, Serra and Omni appealed. The single issue presented on appeal is whether the arbitration provision in the Hock lease is broad enough to encompass this action. We hold that it is.
The Federal Arbitration Act, 9 U.S.C. § 2 ("the FAA"), renders specifically enforceable "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[3] Because it is undisputed that Hock signed the Hock lease, the fact that Serra and Omni produced anadditional document, namely, the Serra-Omni lease, which also purports to control the lease transaction and calls for arbitration, adds nothing to the analysis. Neither is it relevant that Hock disclaims all reliance on the allegedly fraudulent Serra-Omni lease.
In the Hock lease, Hock agreed to arbitrate every "dispute, controversy or claim, involving any Lessee, . . . Lessor or Assignee . . . [that] arises out of or relates to [the] Lease, or the breach of [the] Lease." (Emphasis added.) This Court has repeatedly stated "`that the words "relating to" in the arbitration context are given a broad construction.'" AmSouthBank v. Dees, 847 So.2d 923, 932 (Ala. 2002) (quoting KarlStorz Endoscopy-America, Inc. v. Integrated Med. Sys., Inc.,808 So.2d 999, 1013 (Ala. 2001)) (emphasis added). See also Vann v.First Community Credit Corp., 834 So.2d 751, 754 (Ala. 2002);Bama's Best Housing, Inc. v. Hodges, 847 So.2d 300, 303 (Ala. 2002); Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159,165 (Ala. 1999); Reynolds Reynolds Co. v. King Autos., Inc.,689 So.2d 1 (Ala. 1996); Old Republic Ins. Co. v. Lanier,644 So.2d 1258 (Ala. 1994).
Hock contends that he is "assert[ing] no claims arising out of or relating to the [Hock lease]." Hock's brief, at 19. Therefore, *Page 848 
he contends, "there is no dispute to which the arbitration agreement contained in the [Hock lease] applies." Hock's brief, at 19. The factual allegations and claims in the complaint, however, belie these contentions.
The complaint alleges that Serra and Omni fraudulently altered the Hock lease in order to charge Hock amounts in excess of those he agreed to pay to lease the 1998 Chevrolet pickup truck. Hock also sought a judgment declaring that the Hock lease was the only valid instrument governing this transaction and that he owed nothing further under it. Indeed, the forgery issue is nothing more than a variation of a claim that Serra and Omni breachedthe Hock lease. In other words, if Serra and Omni breached the Hock lease by claiming a net termination liability based on a 12,000-mile-per-annum limitation, it matters not, for purposes of the arbitration provision, whether they did so under color of an allegedly forged instrument, namely, the Serra-Omni lease. Hock's right to relief turns solely on whether the rights of the parties to this dispute are defined by the Hock lease, and Hock admits that he attached that lease to his complaint because it "is factually relevant to the invalidity of the [Serra-Omni] Lease." Hock's brief, at 19. Thus, Hock cannot disclaim reliance on the Hock lease.
Clearly, this "dispute . . . relates to . . . [the Hock] Lease, or the breach of [the Hock] Lease," within the meaning of the arbitration provision in the Hock lease, which Hock admittedly signed. (Emphasis added.) The trial court erred, therefore, in denying the motions of Serra and Omni to compel arbitration. Consequently, the order is reversed and the cases are remanded.
1030302 — REVERSED AND REMANDED.
1030303 — REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, and JOHNSTONE, JJ., concur.
[1] The exhibits referred to in Hock's complaint are not attached to this opinion.
[2] The Serra-Omni lease was also dated March 22, 1998, and bore a signature of "Scott D. Hock."
[3] It is uncontroverted that the transaction in this case bears a nexus with interstate commerce sufficient to invoke the FAA.