294 P.3d 125

**SUN VALLEY RANCH 308 LIMITED PARTNERSHIP, an Arizona limited partnership, by and through its limited partner, Englewood Properties, Inc.; and ENGLEWOOD PROPERTIES, INC., an Arizona corporation, Plaintiffs/Appellees,**

v.

**Steven S. ROBSON and Kimberly M. Robson, husband and wife; Timberline Village Corporation, an Arizona corporation; Scott Homes Multifamily, Inc., an Arizona corporation; The Steven S. Robson Separate Property Trust Agreement of 1988 Dated October 30, 1984 and its unknown beneficiaries, heirs and devisees; Steven S. Robson, as Trustee of The Steven S. Robson Separate Property Trust Agreement of 1988 Dated October 30, 1984; Kimberly Management, Inc., an Arizona corporation; Scott Management Company, an Arizona corporation, Defendants/Appellants.**

No. 1 CA–CV 11–0711.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 20, 2012.

*City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Beus Gilbert P.L.L.C. by Leo R. Beus, Thomas A. Connelly, Sarah S. Letzkus, Scottsdale, Attorneys for Plaintiffs/Appellees.

Stinson Morrison Hecker L.L.P. by Michael Charles Manning, James E. Holland, Jr., Jennifer L. Allen, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

DOWNIE, Judge.

¶ 1 This case requires us to determine whether non-signatories may compel parties bound by an arbitration clause to arbitrate. We also consider an arbitrator's authority to appoint receivers, dissolve limited partnerships, and adjudicate claims for unjust enrichment. Because we conclude that all of the pending claims are subject to arbitration,

we vacate the superior court's contrary order and remand with instructions to order arbitration.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In February 2000, the following entities signed an agreement establishing Sun Valley Ranch 308 Limited Partnership ("SVR 308"):

- General partner Timberline Village Corporation ("Timberline") by Steven Robson,[1] president;
- Limited partner Englewood Properties, Inc. ("Englewood") by its president;
- Limited partner The Steven S. Robson Separate Property Trust Agreement of 1988 Dated October 30, 1984 by Steven Robson;
- Limited partner Kimberly Management Inc. by Steven Robson, president;
- Special limited partner Scott Homes Multifamily, Inc. ("Scott Homes") by Steven Robson, president.

¶ 3 On December 20, 2000, the parties signed an Amended and Restated Agreement of Limited Partnership of Sun Valley Ranch 308 Limited Partnership ("Partnership Agreement"). That same day, Scott Homes as "Contractor" and SVR 308 as "Owner" signed a U.S. Department of Housing and Urban Development ("HUD") contract ("Construction Contract") for the construction of Sun Valley Ranch Apartments ("the Project").

¶ 4 After the Project was completed, Timberline and Scott Management Company ("SMC"), of which Robson is president and CEO, signed a HUD Management Certification, agreeing to enter into a written management agreement for SMC to manage apartment rental operations. SMC was reportedly paid for its management services beginning in 2001, although Timberline and SMC apparently did not sign a HUD management agreement until several years later.

¶ 5 Timberline began marketing the Project for sale in 2006. The Project sold in February 2008 for $32 million. After sales

---

**1.** Unless otherwise stated, references to "Robson" are to Steven Robson. Except for Engle-wood, the members of SVR 308 are part of the "Robson Entities."

proceeds were distributed to the Robson Entities and Englewood, approximately $2.6 million remained in escrow. Timberline and the Robson Entities asserted claims to those funds. Englewood hired a forensic accountant, who opined that Timberline and the Robson Entities owed SVR 308 $5,156,067 and that Englewood was entitled to $2,578,034 based on its ownership interest in SVR 308.

¶ 6 Englewood filed a lawsuit on behalf of itself and SVR 308 (collectively, "plaintiffs") against the Robson Entities, SMC, and Steven and Kimberly Robson (collectively, "defendants"). The complaint asserted ten counts: breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment as to Scott Homes, the Robson Entities, the SVR partners, and SMC; fraud/negligent misrepresentation; breach of fiduciary duty; dissolution and accounting; and piercing the corporate veil of the Robson Entities.

¶ 7 Defendants moved to compel arbitration based on an arbitration clause contained in the Partnership Agreement. Plaintiffs objected, arguing, *inter alia,* that the arbitration clause did not apply to all of their claims or to all parties named in the lawsuit. The superior court denied defendants' motion. Defendants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101.01(A)(1).

## DISCUSSION

¶ 8 In 2010, the Arizona legislature adopted the Revised Uniform Arbitration Act ("AZ–RUAA"). *See* A.R.S. §§ 12–3001 through –3029. The parties agree that AZ–RUAA applies to this proceeding. *See* A.R.S. § 12–3003(A)(3) (AZ–RUAA applies if the arbitration or legal proceeding is commenced after January 1, 2011); Bruce E. Meyerson, *Arizona Adopts the Revised Uniform Arbitration Act,* 43 Ariz. St. L.J. 481, 486 (2011) (same). Because AZ–RUAA substantially mirrors the Revised Uniform Arbitration Act ("RUAA"), we look to cases arising thereunder and to RUAA's commentary for guidance. *See In re Estate of Dobert,* 192 Ariz. 248, 252, ¶ 17, 963 P.2d 327, 331 (App. 1998) (if an Arizona statute is based on a

uniform act, courts assume the legislature "intended to adopt the construction placed on the act by its drafters," and commentary to the uniform act is "highly persuasive unless erroneous or contrary to settled policy in this state") (quoting *State v. Sanchez,* 174 Ariz. 44, 47, 846 P.2d 857, 860 (App.1993)).

¶ 9 A.R.S. § 12–3006(A) states:

An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of a contract.

The court decides "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." A.R.S. § 12–3006(B). We review the denial of a motion to compel arbitration *de novo. Nat'l Bank of Ariz. v. Schwartz,* 230 Ariz. 310, 311, ¶ 4, 283 P.3d 41, 42 (App.2012) (citations omitted).

¶ 10 "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co. v. Peabody W. Coal Co.,* 194 Ariz. 47, 51, ¶ 11, 977 P.2d 769, 773 (1999). Section 13.14 of the Partnership Agreement ("the arbitration clause") reads, in pertinent part:

*Arbitration.* In the event any controversy or dispute arises out of or relating to this Agreement or the breach hereof, each party shall name an arbitrator with in [sic] twenty (20) days after either party notifies the other in writing that there is such a dispute [o]r controversy existing....

## I. Claims Arising Under the Construction Contract

¶ 11 Plaintiffs contend they are only required to arbitrate disputes relating to the Partnership Agreement, whereas "most" of their claims arise under the Construction Contract, which lacks an arbitration clause. Defendants counter that the Construction Contract was incorporated into the Partnership Agreement and that claims arising from or related to the Construction Contract are subject to arbitration.

¶ 12 Other courts have "rejected the notion that disputes arising out of an agreement that lacks an arbitration clause are *ipso facto* not subject to the arbitration clause of a related contract." *Consol. Brokers Ins. Servs., Inc. v. Pan–Am. Assurance Co., Inc.*, 427 F.Supp.2d 1074, 1081 (D.Kan. 2006). In *Consolidated Brokers*, the plaintiffs signed two contracts with the defendants, only one of which included an arbitration clause. *Id.* at 1077–78. In subsequent litigation between the parties, defendants sought to compel arbitration of disputes arising under both contracts. *Id.* at 1078. The district court examined earlier caselaw mandating arbitration under such circumstances, stating:

> [W]here there are two agreements at issue, one with an arbitration clause and one without, the courts first examined the breadth of the arbitration clause. If the court found the arbitration provision to be broad by purporting to cover all disputes "related to" the agreement, the court then evaluated whether the agreements were sufficiently related to justify compelling arbitration of all claims arising under the agreements. In determining whether to compel arbitration of a dispute arising under an agreement lacking an arbitration clause when a related contract contains a broad arbitration clause that encompasses all matters in dispute, courts have considered the following specific factors: (1) whether the agreements incorporate or reference each other; (2) whether the agreements are dependent on each other or relate to the same subject matter; (3) whether the arbitration clause specifically excludes certain claims; (4) whether the agreements are executed closely in time and by the same parties.

*Id.* at 1082.

¶ 13 The *Consolidated Brokers* analytic framework is consistent with Arizona law and with our tenet that doubts about the arbitrability of disputes should be resolved in favor of arbitration. *Saguaro Highlands Cmty. Ass'n v. Biltis*, 224 Ariz. 294, 295, ¶ 5, 229 P.3d 1036, 1037 (App.2010) (citations omitted). We therefore adopt the *Consolidated Brokers* factors.

¶ 14 The arbitration clause at issue here encompasses "any" controversies or disputes "aris[ing] out of or relating to" the Partnership Agreement. It is "the paradigm of a broad clause." *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir.1995) (describing a clause requiring arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" as "the paradigm of a broad clause"). The duty to arbitrate attaches not only to controversies arising under the Partnership Agreement, but also to disputes "relating to" that agreement. "Relating to" is broader than "arising from." *See Bama's Best Hous., Inc. v. Hodges*, 847 So.2d 300, 303 (Ala.2002) (an arbitration clause "that applies to claims 'arising out of or *relating to*' the contract ... has a broader application than an arbitration clause that refers only to claims 'arising from' the agreement"); *Karl Storz Endoscopy–Am., Inc. v. Integrated Med. Sys., Inc.*, 808 So.2d 999, 1013 (Ala.2001) ("[I]t is often observed that the words 'relating to' in the arbitration context are given a broad construction.").

¶ 15 Because the arbitration clause is sufficiently broad to reach disputes under the Construction Contract, we turn to application of the *Consolidated Brokers* factors. Plaintiffs have alleged that a copy of the Construction Contract was "attached to and fully incorporated into the Partnership Agreement." The Construction Contract, on the other hand, does not specifically incorporate the Partnership Agreement. Standing alone, this factor is neutral, though it demonstrates the related nature of the two agreements.

¶ 16 The next factor—whether the two agreements are dependent on each other or relate to the same subject matter—weighs heavily in favor of arbitrating disputes under the Construction Contract. Plaintiffs' complaint alleges that the Construction Contract's terms are "material terms of the Partnership Agreement" and that the Construction Contract is the "primary mechanism for achieving the Partnership's sole purpose." Furthermore, the complaint repeatedly links alleged wrongdoing under the Construction Contract to terms of the Partnership Agreement. For example, the

breach of contract count cites Section 5.2(a) of the Partnership Agreement, which requires "unanimous consent of all the partners" for certain actions. Plaintiffs allege defendants violated this provision because, among other things, the SVR 308 partners did not unanimously agree to change orders to the Construction Contract or authorize payments for building permits and other fees that were reportedly the contractor's responsibility under the Construction Contract. Plaintiffs' own allegations establish the interrelated and inter-dependent nature of the Construction Contract and the Partnership Agreement. Moreover, the two documents were signed the same day,[2] and the arbitration clause does not exclude any specific claims from its reach.

¶ 17 Given the broad scope of the arbitration clause in the Partnership Agreement and our analysis of the *Consolidated Brokers* factors, we conclude that disputes relating to the Construction Contract are subject to arbitration. Plaintiffs acknowledge that their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud/negligent misrepresentation arise out of the Construction Contract. We next consider the remaining counts of the complaint to determine whether they too must be arbitrated.

## II. Common Law and Statutory Claims

¶ 18 According to plaintiffs, "common law duties and remedies grounded in statutes," including claims for unjust enrichment and those seeking relief that may "only be effected by a court," are not subject to arbitration. We conclude otherwise.

### A. Unjust Enrichment

■ ¶ 19 Plaintiffs contend unjust enrichment is a common law theory of relief available on "quasi-contractual grounds" that does not depend on duties or obligations imposed by the Partnership Agreement. The relevant inquiry in terms of arbitrability, though, is whether the unjust enrichment claims "raise some issue the resolution of which

requires a reference to or construction of some portion of the contract." *Dusold v. Porta–John Corp.*, 167 Ariz. 358, 362, 807 P.2d 526, 530 (App.1990).

¶ 20 The unjust enrichment count against Scott Homes reads:

Scott Homes has been enriched by receiving payment of construction costs over and above the fixed price set forth in the Construction Contract, by failing to pay or reimburse Plaintiffs for the fees associated with Letter of Credit No. STI17082, and by failing to pay or reimburse Plaintiffs for the building permits and other fees that Scott Homes was obligated to pay for under the Construction Contract, but that it, in fact were paid directly and/or indirectly by Plaintiffs.

¶ 21 Plaintiffs claim the Robson Entities were unjustly enriched because they "enjoyed the interest free use of SVR 308 funds" for over seven months. The complaint alleges unjust enrichment by the SVR 308 partners (excluding Englewood) based on their receipt of "improper distributions." Finally, plaintiffs assert SMC was unjustly enriched because it received fees for rental management services that were not authorized by the limited partners, as required by the Partnership Agreement.

■ ¶ 22 To recover under an unjust enrichment theory, a party must prove: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 226 Ariz. 242, 251, ¶ 27, 245 P.3d 927, 936 (App.2011). To determine whether defendants have been enriched without "justification," the trier of fact will necessarily need to consider the Partnership Agreement and/or the Construction Contract. These documents establish rights and obligations of the parties not otherwise imposed by law. Among other things, the agreements prescribe the terms for Project costs, building fees, partner distributions,

---

2. As previously noted, the Construction Contract was signed by Scott Homes and SVR 308, through general partner Timberline.

payment of Project fees, management fees and contribution, allocation, and use of partnership funds. The terms of the documents are integral to a determination of whether defendants received *unjustified* benefits to the detriment of SVR 308 and Englewood. As such, the unjust enrichment claims raise "some issue the resolution of which requires a reference to or construction of some portion of the contract," *Dusold,* 167 Ariz. at 362, 807 P.2d at 530, and they are subject to arbitration.

**B.  Receivership**

■ ¶ 23 Based primarily on alleged breaches of the Partnership Agreement and Construction Contract, plaintiffs have requested the appointment of a receiver to "take control of [SVR 308] and wind up its affairs." Seeking to divest management and control of SVR 308 from its partners based on alleged wrongdoing by those partners is clearly a "controversy or dispute" relating to the Partnership Agreement. It therefore falls within the scope of the arbitration clause.

¶ 24 Additionally, the Partnership Agreement specifically adopts the rules of the American Arbitration Association ("AAA") governing commercial transactions. These rules permit arbitrators to impose interim measures deemed "necessary for the protection or conservation of property."[3] R–34, AAA Commercial Arbitration Rules and Mediation Procedures, *available at* http://www.adr.org/. Appointing a receiver for a limited partnership is a measure designed to protect or conserve property. *See* A.R.S. § 12–1241 (authorizing the superior court to appoint a receiver to "protect and preserve property or the rights of parties").

¶ 25 We are unpersuaded by plaintiffs' contention that only the superior court may appoint receivers. Nothing in our statutes prohibits an arbitrator from exercising such authority. Indeed, A.R.S. § 12–3008(B)(1)

confers broad powers on arbitrators, authorizing them to:

> issue such orders for interim remedies, including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitration proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and under the same conditions as if the controversy were the subject of a civil action.

*See also* Meyerson, 43 Ariz. St. L.J. at 494 ("The AZ–RUAA includes an important new section ... clarifying an arbitrator's power to grant interim remedies....").

¶ 26 Comments to RUAA make clear that arbitrators "have broad authority to order provisional remedies and interim relief .... This authority has included the issuance of measures equivalent to civil remedies of attachment, replevin and sequestration to preserve assets." *See* RUAA § 8, cmt. 4, *available at* http://www.uniformlaws.org/. "Sequestration" is defined as, *inter alia,* "[t]he separation or removal of property from the person in possession, pending some further action or proceedings affecting the property." Black's Law Dictionary 1366 (6th ed. 1990). In significant respects, sequestration is the functional equivalent of a receivership under A.R.S. § 12–1241. Plaintiffs' request for a receiver is subject to arbitration.[4]

**C.  Dissolution and Accounting**

■ ¶ 27 Plaintiffs allege that defendants' breaches of contract and fiduciary duties have rendered it impossible "to carry on the Partnership without denying Englewood its benefits as a limited partner." They therefore seek "judicial dissolution of the Partnership pursuant to A.R.S. § 29–345" and "winding up its affairs pursuant to A.R.S. § 29–346." Plaintiffs contend these requests cannot be referred to arbitration because only

---

**3.** The AAA rules also authorize the arbitrator to determine whether a particular dispute is arbitrable. R–7, AAA Commercial Arbitration Rules and Mediation Procedures, *available at* http://www.adr.org/. Neither side has cited this provision, though, so we do not address its potential application to this case.

**4.** We need not decide whether an arbitrator may impose interim or provisional remedies that require the participation of third parties such as garnishees.

the superior court may grant such relief. We disagree.

¶ 28 *Armoudlian v. Zadeh* involved claims for dissolution of a partnership, which the trial court ruled were subject to an arbitration clause contained in the partnership agreement. 116 Mich.App. 659, 323 N.W.2d 502, 505 (1982). The Michigan Court of Appeals agreed, stating:

> [T]he parties do not dispute the existence of the partnership agreement containing the quoted arbitration clause. Moreover, it is plain that the agreement does not expressly exempt a dispute from arbitration when the relief requested is dissolution of the partnership. Therefore, the crucial stage of our inquiry is whether the dispute in question, on its face, is arguably covered by the partnership agreement and the arbitration clause. In this regard, any doubts must be resolved in favor of arbitration, in keeping with our longstanding preference for arbitration as a means of resolving disputes.

*Id.* at 506.

¶ 29 Noting that the dissolution demand was based on "several alleged breaches of the partnership agreement," the Michigan court deemed it within the scope of the arbitration clause. *Id.* The court rejected the notion that partnership dissolutions cannot occur in arbitration. *Id.* at 507. Like Arizona, the Michigan statutes "provide[ ] for court jurisdiction over partnership dissolution." *Id.* However, nothing in Michigan's statutory scheme indicated "such jurisdiction is intended to be exclusive." *Id.* The court held that statutory partnership dissolution:

> is only one of a number of methods or causes of dissolution. A partnership may be dissolved pursuant to the mutual agreement of the partners. If partners are permitted to dissolve and terminate a partnership through their own private settlement and accounting, it follows that they may agree to an alternative nonjudicial mechanism to accomplish the same end. *Arbitration is an acceptable forum for resolving partnership dissolution disputes.*

*Id.* (emphasis added) (internal citations omitted).

¶ 30 In relevant respects, Arizona law tracks the Michigan authorities discussed in *Armoudlian.* Arizona also resolves doubts about the arbitrability of specific disputes in favor of arbitration. *Saguaro Highlands*, 224 Ariz. at 295–96, ¶ 5, 229 P.3d at 1037–38. As in *Armoudlian*, the Partnership Agreement at issue here includes its own terms for dissolving the partnership. And like Michigan's statute, A.R.S. § 29–345 authorizes "the superior court" to dissolve limited partnerships when "it is not reasonably practicable to carry on the business in conformity with the partnership agreement." Yet as in Michigan, nothing in our statutes suggests this power is exclusive or that parties may not agree to submit partnership dissolution and accounting disputes to arbitration. *See also* A.R.S. § 12–3021(C) (allowing arbitrators to impose "such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding").

¶ 31 Plaintiffs' dissolution and accounting demands are based in large part on alleged breaches of the Partnership Agreement. They clearly relate to or arise out of the Partnership Agreement, and the arbitration clause does not restrict an arbitrator's authority to grant such relief. These matters must therefore be resolved in arbitration.

### III. Non-signatories

¶ 32 Finally, we consider whether claims asserted by SVR 308 and counts asserted against Steven Robson and SMC are subject to arbitration.

#### A. SVR 308

¶ 33 SVR 308 was created by the Partnership Agreement. The entity did not exist before the agreement was signed and could not itself have signed the Partnership Agreement. Nevertheless, and more fundamentally, a partnership agreement governs not only relations among the partners, as plaintiffs suggest, but also the relationship "between the partners and the partnership." A.R.S. § 29–1003(A); *see also* § 29–1001(12) (a "partnership agreement" is the agreement "among the partners concerning the partnership"). As a matter of law, SVR 308 is

governed by and subject to the terms of the Partnership Agreement, including the arbitration clause.

**B. Robson**

¶ 34 Robson did not sign the Partnership Agreement or the Construction Contract in his individual capacity. Plaintiffs, however, have alleged that Robson is the alter ego of the Robson Entities and SMC. They are thus claiming that Robson is, legally speaking, the Robson Entities and SMC. *See Deutsche Credit Corp. v. Case Power & Equip. Co.,* 179 Ariz. 155, 160, 876 P.2d 1190, 1195 (App.1994) (alter ego status exists "when there is such a unity of interest and ownership that the separate personalities of the corporation and the owners cease to exist").

¶ 35 *Rowe v. Exline* presents a similar factual scenario. 153 Cal.App.4th 1276, 63 Cal.Rptr.3d 787 (2007). The individual defendants in that case did not sign the underlying contract containing the arbitration clause. *Id.* at 789. Plaintiff sued them, as well as the corporate defendant, alleging the individuals were the alter egos of the corporate entity that had signed the contract. *Id.* at 790. The California Court of Appeal held that the individual defendants could compel arbitration by the plaintiff signatory, stating:

> [Plaintiff] does not refute the law permitting a nonsignatory to compel arbitration if sued as a signatory's agent. Nor does he provide any persuasive reason why a nonsignatory should be precluded from compelling arbitration if sued as a signatory's alter ego. Indeed, while an agent is one who acts on behalf of a corporation, an alter ego is one who, effectively, *is* the corporation.

*Id.* at 793–94.

¶ 36 We agree with the holding in *Rowe.* When a plaintiff sues an individual under an alter ego theory, that defendant may demand arbitration to the same extent the corporate entities could do so. With the exception of SMC, the Robson Entities signed the Partnership Agreement. Accept-

ing plaintiffs' alter ego claims as true, Robson *is* each of these entities and may compel arbitration of the claims against him.[5]

¶ 37 There is an additional, independent legal basis for granting Robson's arbitration demand. Most courts to consider the issue have distinguished between non-signatories seeking to compel arbitration by signatories to an agreement with an arbitration clause and signatories attempting to compel non-signatories to arbitrate. *See, e.g., CD Partners, LLC v. Grizzle,* 424 F.3d 795, 799 (8th Cir.2005) ("The test for determining whether a nonsignatory can force a signatory into arbitration is different from the test for determining whether a signatory can force a nonsignatory into arbitration...."); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.,* 622 F.Supp.2d 825, 830–31 (N.D.Cal.2007) (courts are more likely to order arbitration demanded by a non-signatory when the resisting party is a signatory). As the Second Circuit has explained:

> [I]t matters whether the party resisting arbitration is a signatory or not.... [A] willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory, which takes into consideration the relationships of persons, wrongs, and issues....

*Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 131 (2d Cir.2003) (internal citations omitted) (internal quotation marks omitted).

¶ 38 In *CD Partners,* the Eighth Circuit explored the circumstances under which a non-signatory may compel arbitration by a signatory:

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. Another is when the signatory

**5.** We need not and do not decide whether a plaintiff signatory may compel arbitration by a

non-signatory defendant based on an alter ego allegation.

to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

424 F.3d at 798 (internal citations omitted) (internal quotation marks omitted); *see also Amisil*, 622 F.Supp.2d at 830–31 (non-signatory may compel arbitration based on "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations").

¶ 39 We agree with these authorities. Although Robson did not sign the Partnership Agreement or the Construction Contract in his individual capacity, he may nevertheless compel plaintiffs to arbitrate their claims against him. As previously determined, the trier of fact will be required to consider the Partnership Agreement and the Construction Contract in resolving plaintiffs' claims, and Robson's conduct is intertwined with that of other defendants who signed the Partnership Agreement.

## C. SMC

¶ 40 Plaintiffs allege that SMC was unjustly enriched because it received rental income during the 2000–2006 timeframe, when no HUD management agreement was in place, and without unanimous consent of the SVR 308 partners, as required by the Partnership Agreement. These allegations demonstrate that the claims against SMC are based, at least in part, on purported violations of the Partnership Agreement. For this reason, SMC may compel arbitration. *See CD Partners*, 424 F.3d at 798 (when signatory's claims against non-signatory refer to the written agreement, "the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate"); 4 Am.Jur.2d *Alternative Dispute Resolution* § 60 (non-signatory may compel arbitration by unwilling signatory when latter must rely on contract for its claims and when signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories").

## CONCLUSION

¶ 41 We vacate the superior court's order denying defendants' motion to compel arbitration and remand for further proceedings consistent with this opinion. Defendants request an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12–341.01 "and the Partnership Agreement." In the exercise of our discretion, we deny the request based on A.R.S. § 12–341.01. Defendants have not identified any provision of the Partnership Agreement that entitles them to a fee award at this stage of the proceedings. We therefore deny their request. As the successful parties on appeal, though, defendants are entitled to recover their appellate costs upon compliance with ARCAP 21. We deny plaintiffs' fee request.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and JOHN C. GEMMILL, Judge.